# Federal Defenders
## OF NEW YORK, INC.

Southern District
300 Quarropas Street, Room 260
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124  Fax: (914) 997-6872

Leonard F. Joy
*Executive Director and*
*Attorney-in-Chief*

Paul E. Davison
*Attorney-in-Charge*
*White Plains*

November 2, 2007

Honorable Charles L. Brieant
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:  **United States v. Theodore O'Brien**
     **07 Cr. 602 (CLB)**

Dear Judge Brieant:

The sentencing of my client, Ted O'Brien, is set for next Thursday, November 8, 2007, at 9:30 a.m.

The defense agrees with the Probation Department's determination that a variance from the guideline sentencing range (151 - 188 months) is warranted in this case due to my client's troubled psychiatric history and alcohol addiction.

I write separately to bring to the Court's attention additional factors – specifically Mr. O'Brien's long history of public service as well as cooperation with the Government not rising to the level of "substantial assistance"– which also warrant the Court's consideration in mitigation of punishment. For the reasons articulated by the Probation Department, as well as the additional information set forth below, we urge the Court to sentence Mr. O'Brien to serve 60 months' imprisonment, the statutory mandatory minimum applicable to Count One.

In addition, in anticipation of a Government motion to remand Mr. O'Brien at the time of sentencing, I write to provide the Court with the legal basis for permitting Mr. O'Brien to surrender directly to the facility designated by the Bureau of Prisons.

Finally, I attach for the Court's further consideration in connection with sentencing letters from Mr. O'Brien and from his sister, Linda O'Brien.

## Background

Ted O'Brien is 49 years old. His only prior criminal history is a 1995 misdemeanor DWI. He grew up in Brooklyn and later Newburgh, NY, the son of an alcoholic boilerman and a medical technician. There was alcohol-fueled domestic violence in the household, and after

Honorable Charles L. Brieant  
United States District Judge  
Southern District of New York

November 2, 2007  
Page 2

Re:  **United States v. Theodore O'Brien**  
     **07 Cr. 602 (CLB)**

completing high school Ted escaped from this milieu by enlisting in the United States Army. He served for seven years, was a military policeman at bases in Germany and Greece, achieved the rank of sergeant, and received an honorable discharge in 1984.

    Upon his return to civilian life, Mr. O'Brien embarked upon a career in law enforcement. He completed police training in 1985, and has served on a part-time basis as a Deputy Sheriff in Orange County, a police officer for the villages of Maybrook and Fishkill, and a New York State Park police officer. In 1988, he was hired as a (full time) New York State Corrections Officer, and was continuously employed in that capacity until recently discharged due to his arrest. Mr. O'Brien's record as a law enforcement officer is spotless, and over the years he has received numerous awards and commendations for his service.

    Mr. O'Brien's personal life, on the other hand, has been a troubled one. Like many soldiers, Ted began drinking heavily while he was in the Army. He was briefly married during this period, but divorced within two years (no children) due to incompatibility which was related, at least in part, to Ted's drinking. O'Brien was treated for alcoholism in the mid-1990's, and he met and married his second wife, Lizette, who was also in recovery, in 1996. Ted quit drinking in 1997, beginning a sober period during which he bought a house in Newburgh and helped Lizette raise her three children. Ted and Lizette had a son of their own, Theodore Jr., who was born in 1998.

    Unfortunately, Lizette reverted to alcohol and prescription drug abuse, and the family's domestic life deteriorated. After the 2001 terrorist attacks, Mr. O'Brien took preliminary steps to re-enlist in the Army, but ultimately decided he was doing so for the wrong reasons and resolved instead to seek a divorce. An ugly dispute over custody ensued; although Lizette was initially granted custody of Theodore Jr., Mr. O'Brien was granted custody of his son after Lizette attempted suicide in about 2004.

    Thus, Mr. O'Brien became a single father, a role which became more challenging when Ted Jr. developed symptoms diagnosed as ADHD and Tourette's Syndrome. The house in Newburgh had to be sold in connection with the divorce, so father and son lived in close quarters in a series of small apartments. In August 2005 Ted was attacked by an inmate at the prison where he worked, and nearly lost his arm when the wound became infected. He returned to work, but suffered a back injury last summer which led to another period of disability. Mr. O'Brien began drinking again during this stressful period.

    It was during this period that Mr. O'Brien became obsessed with internet pornography – including child pornography – and engaged in the criminal conduct charged in this case. He felt cooped up in his apartment – due to his parenting responsibilities and his injuries – and turned to

Honorable Charles L. Brieant  
United States District Judge  
Southern District of New York

November 2, 2007  
Page 3

Re: **United States v. Theodore O'Brien**  
**07 Cr. 602 (CLB)**

alcohol and the internet for release. It is my understanding that Mr. O'Brien typically viewed and exchanged child pornography and related "chat" when he had been drinking heavily and his inhibitions were down, often late at night.

As detailed in the presentence report (¶¶ 54-69), Mr. O'Brien has been diagnosed with Post-Traumatic Stress Disorder as well as Major Depressive with Psychotic Features. His illness relates, in large measure, to violence he experienced at the hands of inmates while serving as a correction officer. (See PSR ¶ 53) As noted by his therapist, his heavy drinking exacerbated these problems.

After Mr. O'Brien was arrested and charged with the instant offenses, the Government requested Mr. O'Brien's permission to adopt his online "identity" for use in undercover investigations. Mr. O'Brien agreed, and provided certain passwords and other information to facilitate this effort. It is my understanding that Mr. O'Brien's online "identity" is presently being used in ongoing investigations elsewhere in the country.[1]

Mr. O'Brien has been at liberty on home confinement, pursuant to a $100,000 personal recognizance bond, since his arrest on December 21, 2006.

### Argument

#### 1. Sentencing

This Court's authority to reduce the defendant's sentence in light of "non-5K cooperation" under 18 U.S.C. § 3553(a) is clearly established. United States v. Fernandez, 443 F.3d 19, 33-34 (2d Cir. 2006), cert. denied, 127 S.Ct. 192 (2006). In particular, § 3553(a)(1) is a "sweeping provision" whose reference to the history and characteristics of the defendant includes "the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation." Id. at 33.

Mr. O'Brien's "history" also includes almost 30 years of service to his country and his community as a soldier, a policeman, and a corrections officer. His work as a corrections officer, in particular, exposed him to violence including a gruesome 2005 attack which left him hospitalized for two weeks due to an intentionally-inflicted infection. See PSR ¶53. The stress

---

[1] Mr. O'Brien agreed to allow the Government to use his information on the understanding that, although the Government would **not** file a §5K1.1 motion on his behalf, the Government **would** acknowledge his assistance at the time of sentencing.

Honorable Charles L. Brieant  
United States District Judge  
Southern District of New York

November 2, 2007  
Page 4

Re:   **United States v. Theodore O'Brien**  
      **07 Cr. 602 (CLB)**

of military and law-enforcement work appears to have fueled O'Brien's escalating alcohol abuse as well as his psychological deterioration.

For all these reasons, we urge the Court to determine that the mandatory minimum sentence of 60 months is "sufficient, but not greater than necessary" to accomplish the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

## 2. Voluntary Surrender

The Probation Department reports that Mr. O'Brien

> "is viewed as a good candidate for voluntary surrender. He has kept all court appearances and has been in compliance with all terms and conditions of his pretrial release. He is not viewed as a flight risk or a danger to the community."

PSR p. 23.

Despite this favorable recommendation, counsel has been informed that the Government will seek Mr. O'Brien's remand at the time of sentencing, apparently under 18 U.S.C. § 3143(b)(2)[indicating that the Court "shall order" defendants convicted of certain offenses "be detained.]

Notwithstanding § 3143(b)(2), however, this Court has authority to continue the defendant on bail pending surrender in this case pursuant to 18 U.S.C. § 3145(c). Section 3145(c) states, in pertinent part:

> "A person subject to detention pursuant to . . . section 3143(a)(2), and who meets the conditions of release set forth in section 3143(a)(1) [pertaining to risk of flight and danger to the community] . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

Although this language appears in a statute dealing with appeals from release or detention orders, the Court of Appeals has held that § 3145(c) creates a general "exception" which "permits release of mandatory detainees[.]" United States v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991). The Court of Appeals recently re-affirmed DiSomma's determination that relief from mandatory detention is available under § 3145(c) where there are "exceptional circumstances." United States v. Lea, 360 F.3d 401 (2d Cir. 2004).

Honorable Charles L. Brieant  
United States District Judge  
Southern District of New York

November 2, 2007  
Page 5

Re: **United States v. Theodore O'Brien**  
**07 Cr. 602 (CLB)**

    In the instant case, "exceptional reasons" exist because Mr. O'Brien was employed for 18 years as a New York State Corrections Officer assigned to Downstate Correctional Facility in Fishkill, NY. Bureau of Prisons officials will have to take this prior employment into consideration in designating an appropriate facility, because security considerations surely dictate that Mr. O'Brien not be confined together with former New York State inmates who may remember him from state prison. If Mr. O'Brien is remanded at sentencing, however, he will await designation at Westchester County Jail or some other local facility where potentially hostile encounters with alumni of the state prison system are inevitable.[2]

    Accordingly, we request that the Court continue Mr. O'Brien on his existing bail conditions (which include home confinement) and direct him to surrender to the designate facility on January 4, 2008.

    Thank you for your consideration.

Respectfully,

Paul E. Davison  
(914) 428-7126

cc: Richard Tarlowe, Esq.  
      Assistant United States Attorney

      Michelle Greer Bambrick  
      United States Probation.

---

[2] Counsel is aware of a recent case in which a district judge sitting in White Plains found "exceptional reasons" under 18 U.S.C. § 3145(c) and granted voluntary surrender – over Government objection – in a virtually identical case involving a former New York State Corrections officer convicted of a child pornography offense. United States v. Frank Lapovicy, 03 Cr. 131 (CM)(Sentencing on October 1, 2003).

"ATTN" Paul Davison."

Page 1 of 2

I am writing this letter on behalf of my brother Ted O'Brien. I would like the chance to speak to the court regarding the issues in front of the court at this time. I am now living in Florida, had to move here because our mother had cancer surgery and is not doing well at all... I have talked to Ted regarding his court issues and it would be a huge help for both myself and mother if Ted could be sensed to a lesser amount of time and here in Florida where he can be of some help to her. He will be able to live with me. I have a home next's door to our mother's house and Ted could help with the day to day care of her. I am sadden to say our Mother only had a limited number of years and we need to make that as easy as possible for her. Other then myself Ted is the only other one of my family that can help in this care. My other two sisters have small children and cannot move to Florida.

We are all aware of the gravity of what my brother is going though and understand full but he is a good person who made a error in judgement with words. I feel Ted would do so much good for our mother. help and care for our mother is a lot for one person. Since my brother has been dealing with this he is understanding the gravity of what he did and understand fully. but please remember he is not a person why is always been in

"ATTN: Paul Davison."

trouble. This is a one time error in judgment from a good person. The strain of know what my brother is going through and my mother being is bad health has taken a toll on her recovery.

As the court you have the power to see the type of person you are dealing with her is someone who jail time is not needed. Ted O'Brien is a good person and a great brother. He served in the Army for our country, served our streets for the people of our city and has done so much good over the year. Please take all this into consideration when you are passing judgement on my brother. Any lent of jail time will end in a good chance of him coming home to find his mother has past away. Please take this into consideration and realize jail would not be a benefit in this case.

Thank you for you time and understanding.

Ms. Linda O'Brien



Theodore O'Brien
47 Ridge Road
Montgomery, NY 12549

07 CR 602 (CLB)

September 11, 2007

Federal Court House
300 Quarropas Street
White Plains, NY 10601

Your Honor:

I would like this letter to serve as my letter of remorse. I would like you and anyone else concerned in this matter to know, what were the circumstances of my situation was when these crimes took place. Please, keep in mind that this is not an excuse for my behavior. I realize that this was wrong. I am not justifying the seriousness of this offense. I want to explain my actions.

I have been a NYS Correction Officer for nineteen years. I have also served as a Police Officer for twelve years. I should have known better. But, I am human. I have made a poor judgment and a serious mistake. We are still people. I have not been in trouble, at any other time in my life besides a D.W.I related incident.

At the time of the first offense of 06/18/2005, I was residing in my sister's household, Janet Emm at 47 Ridge Road in Montgomery. I was separated from my wife Lizette. I was severely depressed. I was a middle-aged man living in my sister's basement. I was forced to take custody of our minor son, Teddy Jr. in or around 09/2004. Teddy Jr. is a very difficult child. I have taken him to doctor's which a range of different diagnosis such as Torrette Syndrome and A.D.H.D. It was almost impossible to me to arrange for a babysitter for my son. Even through my sister has raised a son with Autism, my son Teddy Jr. was too out of control. I didn't want to stress my sister and her family with my situation as my sister was clearly doing all that she could for us.

I began drinking again, after being sober and a member of Alcoholic Anonymous and remaining sober for almost seven years. I had been on Worker's Compensation several times through out the course of my career in Corrections, because of the violence associated with my position. Sadly to say, I didn't have much of a life between taking care of my son and his need, working and trying to figure out how to make my son and my life better. I remained in my sister's home to clear up bills and debt's created by my marriage and couldn't afford to live anywhere else. I was basically a shut in because of my situation.

The majority of my time was spent with my son, trying to create a happy life. Anything extra went on him and trying to be a good dad to him. Trying to provide him the things that he needed, like clothing, food, and a tremendous amount of daycare cost. Which was difficult to afford. I received no support from his mother. Nor, did I ask for it. As a Correction Officer you are required to work weekend and holidays. His mom really helped out concerning daycare on the weekends. My son and I enjoyed our time as father and son. We have gone to fairs, picnic, day trips to the city, I also have taken playmates with my son; so, he could have company. My son means so much to me. My son is my entire life. How I affected his life with my actions is the worst punishment of all.

● Page 2                                                                                       September 11, 2007

I misused my computer and use it to replace the loneliness in my life. I have view many different things on the computer. There is so much on the Web, in part my curiously and alcohol got the best of me. But, that is all it was. I never attended on acting in any inappropriate manner. I did not think of the seriousness of what was on the Internet. I feel in today's world people forget, that this is Internet is very real and should be used correctly. The results can be devastating, as this situation has been to me.

I have never, nor would I ever harm any child or any person in fact I am not interested in young children. I have never been. I got caught up in the fantasy world of the Internet along with my depression, loneliness and alcohol use I will never own another computer in my life. I have a serious problem with alcohol. I am an alcoholic. I am interested in going into a program like A.A., but in this situation with this Electronic Monitoring, it's impossible for me to even get a haircut with the restrictions that have been place on me.

I am not a pedophile. I am no harm to society. I have lost so much so far with this offense. With placing importance first: I have lost my son. I have lost my career. I have lost the respect of my co-workers and the Administration. I have hurt my family. I broke my mother's heart. They love me and have supported me thus far. I am sorry to have caused embarrassment to my family, especially my sister who works in Corrections.

I beg the court for mercy. I don't want to be separated from my son. I miss him so much. He needs me in his life. I need the support of my family to get me through this terrible time. I miss my family members. I did something wrong. I made a terrible mistake. I will never make another mistake like that again. Again, I am human. Please, take a look at who I am, and who I have been during my lifetime, and all my contributions I have made towards society. I need help, with my alcoholic issues more than incarceration. I beg of you take mercy on me and my family. I will try never do anything wrong in my life again. Please, give me a chance to correct this error. I am not a monster. I miss my family and my life. My career is over. After this sentence is served, I will be an old man and my son will be a young man. I have suffered, in so many ways. I am so remorseful for what I have done. I can't believe I have let alcohol do this to me. It has destroyed my life. I am sorry to all concerned with me, and everyone I affected.


Sincerely,

*Theodore O'Brien* (signature)

Theodore O'Brien


TOB/jre